ROBERTO CASTELLÓN, Plaintiff and Appellant, v. CARMEN PADÍN ET AL., Defendants and Appellees.

No. 8410.  Argued April 29, 1942.—Decided May 18, 1942.

*Ortiz Toro & Ortiz Toro* for appellant. *Celestino Iriarte, F. Fernández Cuyar* and *H. González Blanes* for appellee Teobaldo Casanova Prats. *A. Casanova Prats* for appellees Carmen and Joaquín Padín.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

José Segarra brought an action of debt against Roberto Castellón. An attachment of property having been decreed, Joaquín Padín and Carmen Padín executed, on June 11, 1937, a $3,000 bond, binding themselves to answer "for any damages that might be caused to defendant Roberto Castellón in the event that it were finally decided that no judgment should be rendered against the defendant in said action."

On September 15, 1937, the District Court of San Juan dismissed the suit brought by Segarra against Castellón, the judgment becoming final, as no appeal was taken thereupon.

On July 10, 1939, Roberto Castellón brought the present action and alleged that the sureties, Carmen and Joaquín Padín, by simulation, without consideration and for the purpose of defrauding the plaintiff, as their creditor, had conveyed the house respectively owned by them to the defendant Teobaldo Casanova Prats, by a public deed executed on July 2, 1937, thus becoming insolvent by reason of such conveyance and without any other property against which the bond could be enforced. The plaintiff prayed for the annulment of the deed and the rescission of the transfer.

The defendants answered and set up, among other defenses, that the complaint failed to state facts sufficient to constitute a cause of action. After the case had been called for trial and the demurrer argued, the lower court sustained the demurrer "on the ground that the complaint failed to state that at the time of the alleged conveyance the plaintiff was a creditor of the defendant or that no (*sic*) obligation existed in his favor," and allowed the plaintiff ten days to amend his complaint. In the amended complaint, filed on March 20, 1941, the plaintiff alleged:

"6. That Joaquín Padín and Carmen Pádín, defendants herein, by reason of the furnishing of said bond and of said damages suffered by Roberto Castellón, plaintiff herein, are indebted to the plaintiff herein, the sum of $3,000, and for the recovery of said sum the plaintiff herein has brought an action in this court under No. 32,159 against Joaquín Padín, Carmen Padín, and Prudencio Collazo, defendants herein.

"10. That at the time of the said conveyance . . . plaintiff Roberto Castellón had a claim against defendants Joaquín Padín, Carmen Padín, and Prudencio Collazo for the amount of damages caused to the plaintiff herein in consequence of the attachment levied . . . the defendants Joaquín Padín, Carmen Padín, and Prudencio Collazo having subscribed a bond in favor of Roberto Castellón, . . . , for the levying of an attachment . . ."

The lower court sustained a demurrer for insufficiency directed against the amended complaint, on the grounds that "There is no allegation as to said bond having been liquidated, or as to what were the damages caused to the plaintiff by reason of said attachement," and that "The facts as alleged in the amended complaint fail to show that the plaintiff had any claim against the defendants at the time of the commencement of this action or at any other time, which is an indispensable requisite in actions of the kind brought herein." Holding that the complaint was not susceptible of further amendment, the court, on June 24, 1941, rendered judgment for the defendant. On July 1, 1941, the plaintiff moved for a reconsideration of the judgment and requested leave to file a second amended complaint. Upon both motions being denied, the plaintiff took the present appeal. In support thereof he has assigned twelve errors which we will consider together, as they all bear upon the only essential question involved herein, which we will formulate thus: Had the plaintiff Castellón, from the moment the bond was furnished in his favor, the status of a creditor of the sureties and as such creditor entitled to demand the rescission and annulment of the alleged fraudulent transfer, made by the sureties for the purpose of

evading the obligation to compensate him for any damages suffered by him in consequence of the attachment?

Before taking up the consideration of the question raised, let us mark, as important, these dates: (1) June 11, 1937, when the bond was furnished and the attachment levied; (2) July 2, 1937, when the alleged fraudulent conveyance was executed; (3) September 15, 1937, when the judgment dismissing the action brought by Castellón was rendered and the attachment secured by the bond executed by the defendants Padín became void and without effect.

The decisions of this court, cited by the lower court, in support of the judgment and order appealed from, have not been, in our opinion, correctly applied to the facts and circumstances of the case at bar.

■ In *Sucn. of Almazán v. López et al.*, 20 P.R.R. 502, 505, 506, the rescission was sought, under §1258 of the Civil Code, Comp. Stat. 1911 (§1243 Civil Code, 1930 ed.), of a contract of sale of a condominion in a certain property, on the ground that the same was executed in fraud of the plaintiff creditor. In holding that the complaint was insufficient, this court laid down the rule that:

". . . there is no doubt that in an action of the nature of the one brought in this case the complaint should set up: (*a*) That the defendant is really the plaintiff's debtor; (*b*) that the defendant alienated his property in fraud of his creditors; (*c*) that the plaintiff has been injured by such alienation; (*d*) that the plaintiff has no other remedy at law to obtain reparation for the injury suffered than that of seeking the rescission of the contract of alienation."

In all the other cases cited (*Fernández v. Riera & Co., Inc.*, 41 P.R.R. 329; *Rodríguez v. Soto*, 42 P.R.R. 798; *Congress Cigar Co. v. Grau*, 44 P.R.R. 626; *Congress Cigar Co. v. Cabrera*, 45 P.R.R. 176; *Heirs of Drew v. Pinto*, 49 P.R.R. 565; *Figueroa v. Bonilla*, 50 P.R.R. 30; *Nine v. Avilés*, 53 P.R.R. 471; and *Martí v. Hernández*, 57 P.R.R. 804) the holding was that in order to be entitled to a rescissory action, as prescribed in §§1243 and 1249 of the Civil Code (1930 ed.),

it is necessary that the obligation or credit should already exist at the time of the execution of the alleged fraudulent conveyance, that is, that the plaintiff had at that time the status of creditor of the defendant.

In none of the cases cited is it held that for a plaintiff to have a cause of action for the annulment of a fraudulent conveyance, it is an indispensable requisite that the debt or obligation had become due or was demandable at the time of the execution of the alleged conveyance.

In his commentaries on §1291 of the Spanish Civil Code, similar to §1243 of our Civil Code (1930 ed.), in which it is provided that contracts executed in fraud of creditors may be rescinded, Manresa says:

"From what has just been decided we reach the conclusion that the foremost requisite is the existence of a credit, which existence must be prior to the contract, even though the enforcibility of the former might be subsequent to the date of the latter, inasmuch as by foreseeing it the insolvency might be prepared. The date of his credit and its priority regarding the contract, must be proved, in conformity with the ordinary rules, by the person who brings the rescissory action." Manresa, 4th ed., vol. 8, p. 668.

See *Stein* v. *Gibbons*, 16 La. 103.

▇▇ Were Carmen and Joaquín Padín debtors to the plaintiff on July 2, 1937, when they conveyed their properties, fraudulently, as alleged, to Casanova Prats, the other defendant? In our opinion they were.

By the bond executed on June 11, 1937, the defendants Padín bound themselves to compensate Castellón for any damages caused to him by the attachment, up to the sum of $3,000. It is true that the debt or obligation contracted by the defendant had not become due nor was it enforceable at the time of the conveyance whose simulation and fraudulence must be considered as admitted by the demurrer; that the date of the maturity or enforcibility of the debtor or obligation had to be fixed, as it actually was, by the judgment avoiding the attachment; and that the sureties would not

have to pay anything if the attachment had been declared valid by the judgment. But it is no less true that at the time of the fraudulent transfer there existed a valid contractual obligation to pay an indeterminate sum of money, not to exceed $3,000 if and when the district court held that the attachment had been unlawfully levied, said obligation to be subject to the condition that the sureties would not have to pay anything to Castellón if the judgment was against him.

It is held almost unanimously by the state authorities which we have examined that it is not an indispensable requisite for the exercise of a rescissory action that the obligation in favor of the plaintiff should have become due or be enforceable at the time of the fraudulent conveyance.

In *Washington* v. *Norwood,* 128 Ala. 383, 30 So. 405, it was held that a surety is a creditor of the cosurety from the time of the execution of the joint obligation, and that as such creditor he is entitled to protection against a fraudulent conveyance made by his cosurety subsequent to the furnishing of the bond; although he can not maintain an action to enforce his right until the claim becomes due and is suable. See *First National Bank* v. *McConough,* 168 P. 635.

We find in Corpus Juris the following paragraphs which we transcribe, as we deem them pertinent to the case at bar:

"The general rule is that any preexisting creditor has the right to attack a conveyance made by his debtor as being in fraud of the rights of his creditors.

"Existing creditors are, as the words imply, persons having subsisting obligations against the debtor at the time the fraudulent alienation was made or the secret trust created, although their claims may not have matured or even been reduced to judgment until after such conveyance. The indebtedness will relate back to its original inception as regards the question of constituting the claimant an existing creditor." 27 C. J. 572, §§ 111 and 112.

"Contingent Obligations.—Although there is some authority to the contrary . . . according to the weight of authority a contingent liability is as fully protected against fraudulent and voluntary conveyances as a claim certain and absolute, and whoever has a claim

or demand arising out of preëxisting contract, although it may be contingent, is a creditor whose rights are affected by such conveyances and can avoid them when the contingency happens upon which the claim depends." 27 C. J. 473, §113, and cases cited therein.

". . . It is not necessary that the plaintiff should be a judgment creditor before bringing the action for rescission. What is required is that he be really and truly a lawful creditor of the defendants. If he had a judgment for his credit before the commencement of the action for rescission or obtained one during the course of the same, this would be a circumstance in corroboration of the right of the plaintiff, but the plaintiff could have omitted to plead it and relied solely on alleging and proving in the action for rescission his status as the defendants' creditor."

In the case at bar, when the action for rescission began, the right of the plaintiff to recover damages had not yet been acknowledged by a judgment, but it was so acknowledged during the proceedings. The plaintiff was entitled to show within the action for rescission the amount of his claim as creditor of defendant, by introducing in evidence the judgment rendered in his favor in the action for damages entered under No. 32,159. His status as a creditor became established from the time of execution of the bond in his favor, dated prior to the conveyance sought to be annuled. Upon the dissolution of the attachment, which was the contingency which rendered the bond enforceable, the amount of the compensation could be fixed within the rescissory action or in a separate action as, it is alleged, was done in this case.

The principal function of judicial tribunals is to afford an adequate legal remedy for repairing any injury that may have been unlawfully caused to a party resorting to them for relief. *Ubi jus, ibi remedium.* Greater still must be the zeal and care of the courts in the performance of such a high function when it is sought to prosecute or to prevent fraud and simulation. As stated by us in *Roig Commercial Bank v. Portela,* 52 P.R.R. 626, 627, it is in such cases of fraud "When the sympathies of the court ought to be with the

person defrauded, so that the latter should not be deprived of his rights on technical grounds . . . . ''`

The Supreme Court of Spain in a judgment of March 11, 1878, (39 *J.C.* 285), held as fraudulent the sale of certain undivided interests in a house—the only property owned by the vendor—made in favor of one of his sons, in order to evade the payment of a bond executed by such vendor. In a judgment of October 4, 1884 (56 *J.C.* 238) it held that conveyances without consideration are presumed to be fraudulent and may be rescinded by a mere showing that they have injured the creditors, it not being necessary, therefore, that the debtor should have been defeated in court prior to the conveyance presumed to be injurious to the creditors. See *Enc. Jur. Española,* vol. 13, pp. 578 and 579.

It appears from the allegations of the plaintiff—admitted by the defendants—that after the judgment avoiding the attachment had already become final, Roberto Castellón filed in the District Court of San Juan two distinct and separate complaints. In the first, which was entered in case No. 32,159, he sought to recover the sum of $3,000, as the amount of damages caused to him by the attachment. The second, entered in case No. 32,160, is the one that gave rise to the present litigation. Under the jurisprudence of this jurisdiction, the plaintiff could have prosecuted both actions jointly, by means of a single complaint, and the court could, in the exercise of its discretion have consolidated both cases to be tried simultaneously. The plaintiff was not bound to wait for a judgment to be rendered in the action for damages in order to be entitled to bring either the rescissory action or one for the annulment of the alleged fraudulent conveyance. It was so held by this court in *Suc. of Almazán* v. *López, supra,* as follows:

If the acts alleged in the complaint and admitted by the demurrer, that is, the simulated conveyance without consideration of the properties by the sureties shortly after the

execution of an attachment bond, could be carried out with impunity, what would be the value of bonds and what security would be available to those persons whose properties were to be unlawfully attached?

If, on the mere technicality that the bond was not enforcible at the time of the fraudulent conveyance, were we to hold that the plaintiff did not have at that time the status of creditor of the sureties, we would be incurring in an error of law, prepetuating and encouraging fraud, by allowing the sureties to evade the payment of what they justly owe to the plaintiff, and to continue as the owners of the properties which were by simulation gratuitously conveyed to the co-defendant.

The order and judgment of June 24, 1941, sustaining the demurrer to the amended complaint of March 20, 1941, and dismissing the amended complaint must be reversed, and the case remanded to the lower court for further proceedings not inconsistent with this opinion.