# Richmond.

## DULANEY v. WILLIS & OTHERS.

### FEBRUARY 10, 1898.

#### Absent, Cardwell, J.

1. TRUST DEED—*Name of Trustee Omitted—Equitable Mortgage.*—A deed of trust on real estate to secure creditors, in which the name of the trustee is left blank, is an equitable mortgage, and may be enforced as such, for the benefit of the creditors secured. Whatever may be the form of a contract, if it is intended thereby to create a security, it is an equitable mortgage, and enforced, on the principle that equity treats that as done which, by agreement, is to be done.

2. GENERAL CREDITORS—*Rights in Decedent's Estate—Specific Liens not Recorded.*—The rights of general creditors of a decedent are subject to all equities attaching to the decedent's estate at the time of his death. General creditors take the estate in the plight in which they find it, and their rights cannot be enlarged or improved beyond their debtor's, to the prejudice of a creditor who has taken a lien which he has not recorded, or which cannot be recorded. The creditor who seeks to assail the lien must come with a lien by judgment, or otherwise, giving him a right to charge the property specifically.

Appeal from a decree of the Chancery Court of the city of Richmond in a suit in chancery instituted by the appellees, Francis T. Allen and Otway S. Allen, suing on behalf of themselves and other creditors of James Alfred Jones, against the devisees and legatees of said Jones, the appellant, and others, for the purpose of having the estate of said Jones administered under the order of the court.

*Reversed.*

The opinion states the case.

*R. C. Scott* and *Scott & Staples*, for the appellant.

*Leake & Carter, Christian & Christian, B. Rand. Wellford, Chas. S. Stringfellow, W. B. Tennant* and *Ed. Nichols*, for the appellees.

HARRISON, J., delivered the opinion of the court.

On the 4th day of July, 1893, James Alfred Jones, of the first part, signed, sealed, and delivered to R. H. Dulaney, of the third part, a deed conveying to ———————, as trustee of the second part, certain lands therein described in trust to secure said Dulaney against loss from endorsements theretofore made, and thereafter to be made by him on certain notes of the said Jones.

The grantor died in February, 1894, insolvent, and Dulaney has had to pay a large sum as endorser of the notes mentioned in the deed.

The general creditors of deceased contest the right of appellant to a specific lien upon the lands conveyed, and insist that he is only entitled to share ratably with them in the proceeds. Two grounds are urged in support of this contention.

First, that the instrument in question is not a deed, and is absolutely void in law; that it is lacking in one essential particular to make it a deed, there being no party of the second part mentioned therein as grantee, and consequently no one in whom the legal title could vest.

That the writing in question is valid as a contract between James Alfred Jones and R. H. Dulaney whereby the former agreed that the latter should have a lien, for his protection as endorser, upon the lands mentioned therein, and that such an agreement will be enforced, and effect given to the intention of the parties, is well settled by abundant authority. The lien created by such a contract is defined to be an "equitable mortgage," and it arises whenever the agreement shows a clear in-

tention to make some particular property a security for the debt or obligation mentioned therein.

Whatever the form of the contract may be, if it is intended thereby to create a security, it is an equitable mortgage, and enforced upon the principle that equity will treat that as done which, by agreement, is to be done. 1 Jones on Mortgages, secs. 162, 163, 168; Beach on Modern Eq. Jur., secs., 291-2; *McQuie* v. *Peay*, 58 Mo. 56; *Ruffners* v. *Putney*, 12 Gratt. 551.

The paper in question is in the handwriting of the deceased. Its object and purpose is expressed in the following language: "Now, therefore, the said James Alfred Jones, desiring to secure the said R. H. Dulaney from loss by such endorsement of said notes, or renewal of notes, or any of them, that he may consent to endorse, doth bargain, sell and convey unto the said party of the second part, as trustee, in trust to secure said notes" the property described therein.

Treating the paper as a contract between the parties, its terms are clear and unambiguous, it is about a lawful subject matter, founded upon a valuable consideration, and, under the established doctrine adverted to, effect should be given to the manifest intention therein expressed.

The second contention is that the writing not being acknowledged and recorded, no rights can be claimed under it superior to those of the general creditors.

It is the established doctrine in this State that the rights of the general creditors of a decedent's estate are subject to all the equities attaching thereto at the time of his death; that they take the estate in the same plight and condition in which the debtor left it, and their rights cannot be enlarged and improved beyond those of the debtor, to the prejudice of a creditor who has taken a lien, though he may have failed to record it. The creditor who seeks to assail it must come with a lien by judgment or otherwise giving him a right to charge the property specifically. *McCandlish* v. *Keen*, 13 Gratt. 615.

There has been no change in the registry laws since the de-

cision of the case cited that affects the conclusion therein reached, nor is there any distinction in principle between the right of a general creditor to assail a valid lien that is capable of being recorded but is not, and his right to attack such a lien that is not capable of being recorded. The creditor with a valid lien, whether capable of being recorded or not, may, in the lifetime of his debtor, file his bill in equity to enforce it against the specific property pledged as security, and the general creditor cannot resist or assail it without first reducing his claim to judgment or some other form of lien, and he stands on no higher footing after the death of his debtor than he did before.

The lien claimed by appellant could have been enforced in the lifetime of his debtor, and creditors without liens could not have complained. The death of the debtor has wrought no change in the rights of the parties, and appellant is therefore still entitled to the benefit of the pledge given as his security.

For these reasons we are of opinion that the Chancery Court erred in holding that the writing in question created no lien upon the real estate mentioned therein, and in sustaining the exceptions taken by the general creditors to the report of the commissioner finding the amount due appellant to be a preferred charge upon the lands designated as security therefor.

The decree appealed from must, therefore, be reversed, and this cause be remanded to the Chancery Court of the city of Richmond, to be there proceeded with in accordance with the views herein expressed.

*Reversed.*